<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Robert L. SMALL,<br><br>                Plaintiff,<br>v.<br><br>Gary M. LANIGAN, et al.,<br><br><br>            Defendants. | Civ. No. 11-2565<br><br><br>**OPINION** |

<u>THOMPSON, U.S.D.J.</u>

The present matter comes before the Court on two motions for summary judgment: (1) the motion filed by Defendant Greg Bartowski, Gary Lanigan, and Ralph Woodward, (Doc. No. 115); and the motion filed by Defendants Abu Ahsan, Paula Azara, Margaret Cocuzza, Donique Ivery, Ihuoma Mwachukwa, and the University of Medicine and Dentistry of New Jersey, (Doc. No. 116). The Court has issued the Opinion below based upon the parties' written submissions and without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated herein, the motions for summary judgment will be granted.

BACKGROUND

This case concerns the medical treatment of a paralyzed prisoner.

Plaintiff Robert Small, who is paralyzed from the waist down, suffers from physical pain, dizzy spells, migraines, and occasionally limited movement in his neck. (Docket No. 126, Ex. 5, at ¶¶ 1-3). As a result of his physical condition, Plaintiff is confined to a wheelchair, which is provided by the prison system. (*Id*. at ¶ 4). On October 19, 2010, a part of Plaintiff's wheelchair fell off. (*Id*. at¶ 5). Plaintiff sent several letters to prison officials, and he eventually was offered

a new chair.  (*Id*. at ¶ 8).  Apparently, believing that the new wheelchair was in worse condition than the previous chair, Plaintiff refused to accept the new wheelchair.  (*Id*. at ¶ 9).  Plaintiff eventually received a "safe, functioning wheelchair at or around the time of the filing of this lawsuit."  (*Id*. at ¶ 10).

Plaintiff also alleges that he received improper medical treatment and that this improper treatment was not resolved or adequately addressed by prison officials.  On November 5, 2010, Plaintiff was examined in the prison infirmary because he suffered from "bloody stools."  (*Id*. at ¶ 12).  Plaintiff alleges that the treating nurse, Defendant Ivery, had a "nasty disposition" and "denied" him "everything [he] asked of her."  (*Id*. at ¶ 14).  Plaintiff and Defendant Ivery engaged in an argument after which Plaintiff requested to "see the doctor."  (*Id*. at ¶¶ 16-17).  Defendant Ivery allegedly responded by saying "If you refusin[g] to be seen by me, you're refusin[g] medical treatment.  I'm gonna take your pain medication from you, I'm going to take your wheelchair and you ain't gonna have nothin[g]."  (*Id*. at ¶ 18).  Plaintiff submitted to the examination from Defendant Ivery.  (*Id*. at ¶ 19).

During the examination, Defendant Ivery found one small external hemorrhoid.  (*Id*. at ¶ 20).  Defendant Ivery changed Plaintiff's medication dose from two Vicodin pills twice a day down to one Vicodin pill twice a day.  (*Id*. at ¶ 21).  Plaintiff claims that the pain he suffered as a result of his paralysis increased significantly.  (*Id*. at ¶ 23).

On November 6, 2010, Plaintiff submitted a health services request form stating that his "pain medication has been reduced by [Defendant] Ivery, due to an argument, and [that he] would like to be reexamined by [Defendant] Dr. Ahsan for 'pain management.'"  (*Id*. at ¶ 24).  On November 15, 2010, Plaintiff was treated by Defendant Ahsan who explained that the dosage

was reduced due to diminished sensation in Plaintiff's lower extremities; Defendant Ahsan did not change the pain medication dosage.  (*Id*. at ¶ 26).

Between November 5, 2010 and May 4, 2011, Plaintiff filed thirty-six health services request forms requesting that his pain medication dosage be restored to its previous level.  (*Id*. at ¶ 30).  Plaintiff's thirty-six health services requests resulted in Plaintiff being taken to the infirmary and examined seventeen times.  (*Id*. at ¶ 31).

Plaintiff also submitted nine formal inmate remedy forms, attempting to inform authorities of his pain medication issue and the wheelchair matter.  (*Id*. at ¶¶ 37-38).  Plaintiff received no response from these requests.  (*Id*. at ¶¶ 37-38).  Plaintiff also wrote letters to prison authorities, including Defendants Lanigan, Woodward, Bartowski, and Azara, concerning his condition.  (*Id*. at ¶ 39).  Plaintiff received one response which stated "I've asked for you to be seen one more time.  If the answer is the same, I'm sorry I can't do anything for you and you might have to take us to the court."  (*Id*. at ¶ 44).

1. *Legal Standard*

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it will "affect the outcome of the suit under the governing law [. . .]."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party."  *Id.*  When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party."  *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n.2 (3d Cir. 1983).  The movant "always bears the initial responsibility of informing the district court of the basis for its motion,

and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson,* 477 U.S. at 250 (quoting Fed.R.Civ.P. 56(e)). The non-movant's burden is rigorous: it "must point to concrete evidence in the record;" mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. *Orsatte v. N.J. State Police,* 71 F.3d 480, 484 (3d Cir. 1995); *Jackson v. Danberg,* 594 F.3d 210, 227 (3d Cir. 2010) (citations omitted) ("[S]peculation and conjecture may not defeat summary judgment.").

2. *Analysis*

Defendants argue that Plaintiff failed to exhaust his administrative remedies.

A plaintiff must exhaust his available administrative remedies before bringing a Section 1983 claim. *Jones v. Bock*, 549 U.S. 199, 209-10 (2007). Courts use the procedures set out in a prison's administrative grievance program as a guide in determining whether an inmate has exhausted his administrative remedies. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). "Courts have recognized that an inmate may satisfy the exhaustion requirement where he follows an accepted grievance procedure, even where that procedure contradicts a written policy." *Smith v. Merline*, 719 F. Supp. 2d 438, 445 (D.N.J. 2010) (finding evidence of an "alternative route for making grievances" after plaintiff "submitted at least nine handwritten grievances . . . all of which [defendants] addressed on the merits" and defendants "never refused to address his handwritten grievances 'on the grounds that he failed to comply with the grievance procedure in the Inmate Handbook"); *Brown v. Croak,* 312 F.3d 109, 112 (3d Cir. 2002) (holding that when

prison officials told prisoner that grievance procedures were different than official procedures, prisoner was not required to follow written procedures).

Here, the prison's official written administrative remedy procedure required Plaintiff to appeal an unfavorable response to an Inmate Remedy Form.  (Docket No. 115, Smith Decl., ¶ 13).  Plaintiff did not comply with this requirement.  (Docket No. 115, Defs.' Statement Facts at ¶ 15; Docket Entry No. 127, Pl.'s Resp. Defs.' Statement Facts at ¶ 15).  However, Plaintiff argues that there was a "parallel procedure" through which Plaintiff exhausted his administrative remedies.  Specifically, Plaintiff argues that he sent "nine inmate remedy forms . . . and sent numerous letters directly to Defendants.  (Docket No. 127 at 12).  Defendants responded to several of Plaintiff's letters.  In one letter, Defendant Bartkowski's stated the following:  "I'm sorry I can't do anything for you and you might have to take us to court."  (*Id.*)

After consideration of the parties' written submissions, it appears that the facts of Plaintiff's case differ from cases in which courts have found evidence of a parallel procedure.  For instance, unlike in *Brown*, where the plaintiff alleged that prison officials specifically told the plaintiff that he had to follow a certain procedure, 312 F. 3d at 111, Plaintiff has not shown that he was told to follow a different procedure.  Plaintiff has only shown that one official told Plaintiff that Plaintiff "might have to take us to court."  (Doc. No. 127 at 12).  This statement alone could not create a "parallel procedure" through which Plaintiff could exhaust his administrative remedies.

For the reasons set forth above, Plaintiff has not exhausted his administrative remedies.

CONCLUSION

For the reasons set forth above, the motions for summary judgment will be granted.


_/s/ Anne E. Thompson_____
ANNE E. THOMPSON, U.S.D.J.